FOURNET, Chief Justice.
 

 The defendant, Mrs. Mary M. Nassif,
 
 [1]
 
 is appealing from a judgment of the District Court awarding to her the sum of $7,500' as the value of certain property
 
 [2]
 
 in Alexandria, Louisiana, the result of an expropriation suit by the Rapides Parish School Board — the said property being necessary to complete acquisition by the Board of a site for a proposed new colored elementary
 
 *221
 
 school to he constructed on Square 26 of the Welch Addition to the city. The defendant complains that the plaintiff’s expert witnesses, in arriving at an evaluation of $8,000, made their appraisals on the basis of replacement costs less depreciation on the building, and the raw value of the land, but that the true value of her property can be arrived at only by taking into consideration the value of the business conducted thereon, and that the assessment, as demonstrated by the various methods of computation employed by her expert witnesses, should have been fixed at from $12,-000 to $15,000; also, that she should have been allowed the cost of moving, an amount shown as $753.25.
 

 The land expropriated has a frontage of 42 feet on Reed Street and a depth of 71 feet between parallel lines; the improvements, which covered practically the whole area, consisted of a one-story frame building partitioned into two sections, half being rented to third parties for use as a cafe at a rental of $55 per month and the remainder being used by the defendant and her husband in operating a grocery store, meat market and liquor store. The business was patronized in the main by the negro employees of nearby industrial enterprises, many of whom also lived in the vicinity. In February, 1946, Mrs. Nassif, who had been a tenant, acquired the property for $3,600. The area was later classified as “Zone B residential,” in which by local ordinance the sale of alcoholic beverages is prohibited, but since Mrs. Nassif had sold liquor on the premises prior to the adoption of the ordinance she retained the privilege to continue such sales. The building’s encroachment on adjoining property had been the subject, on October 28, 1948, of a written agreement between the Nassifs and the adjoining owners by which the building was to remain as placed, but the Nassifs would acquire no rights by that fact and acknowledged title to the land in other named persons.
 

 The five experts who testified in this case,
 
 [3]
 
 real estate appraisers of reputation and many years’ experience in the locality, were not in great disagreement when the basis used in arriving at their estimates was the value of the land plus replacement costs of the improvements less depreciation, keeping in mind the best use to which the property could be put, i. e., commercial — their appraisals being in the neighborhood of $8,000. Certain variations in the estimates are attributable to the fact that some appraisers calculated a greater need for repairs on the building, while others, in an effort to meet the test of a voluntary sale between a willing seller and a willing buyer, took into consideration
 
 the
 
 encroachment on adjoining land and the cost of moving the rear portion and a side wall of the building to bring it within the
 
 *223
 
 bounds of defendant’s title. Through the defendant’s witnesses, two other methods of appraisal were developed from the viewpoint of the property’s revenue producing capacity; estimates were made of tire market value for investment purposes between a willing buyer and a willing seller (a) on the basis of rental income or return, and (b) by reason of location, rental income, business income, and exclusive right to sell liquor in the immediate vicinity. In calculating by the former method, defendant’s witnesses estimated that a fair rental value for both portions of the building would be $110 per month, and based upon that rental revenue they computed a fair value of the property for investment purposes of $9,000 (in the opinion of two) to $11,000 or $12,000 (in the opinion of the third).
 
 [4]
 
 In calculating by the other, or latter, method it was assumed by the appraisers that the business produced a net revenue of $5,200 before salaries for Mr. and Mrs. Nassif and before overhead deductions ; after such deductions, a business investment value was computed
 
 [5]
 
 and that figure, when added to the physical value of the land and building, resulted, according to the calculations of defendant’s three experts, in a “fair market price” of $15,000.
 

 The trial judge found no authority in the jurisprudence for allowing recovery on the basis of the value of the business as a going concern computed in the (last above outlined) manner used by defendant’s experts,
 
 [6]
 
 stating that “The courts of Louisiana have uniformly considered the value of the business only in so far as it helps to determine the fair market value of the land and buildings.” In arriving at a valuation the judge noted that the experts for both plaintiff and defendant “almost uniformly agree” on the figure of $8,000 as the value of the land and of the building on a cost of replacement less depreciation ba
 
 *225
 
 sis, and observed that with respect to valuation of the property on the basis of fair rental return, the experts varied their estimates from $7,000 to $9,000, so that, all things considered, he thought the sum of $8,000 to be a fair price.
 
 [7]
 
 Reimbursement for moving costs was not allowed; the deduction of $500 was made in an effort to settle equitably the problem of encroachment on adjoining land and the extent to which the price would be thereby affected in a sale of the property to a willing buyer.
 

 The rule is well settled that the best guide in determining the market value to which the owner is entitled under the law in expropriation suits is evidence of sales of similar or comparable properties in the vicinity, Texas Pacific-Missouri Pacific Terminal R.R. v. Dittmar, 161 La. 444, 108 So. 877; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36, and that where the record contains no satisfactory evidence of sales comparable to that involved, ascertainment of the true value must be sought by a consideration of other factors and circumstances, Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541, and authorities cited therein; it is equally well recognized that rental income and value of the business are not sole criteria but are material to the extent that they assist in determining the fair market value, Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193; Housing Authority of New Orleans v. Boudwine, supra; and from our appreciation of the evidence we cannot say that the valuation of $8,000 by the trial judge is not fair and reasonable.
 

 On the other hand, we fail to find substance in his deduction of $500 from that amount because of the building’s encroachment on adjoining land, and based on estimates to make a proper adjustment and correct the defect. The record is barren of anything to indicate a requirement or necessity for such an adjustment and the adjoining owners, who were cognizant of the situation, appear to have considered that their rights were sufficiently protected by the written agreement between Mrs. E. G. Cicardo and Mr. and Mrs. Nassif, dated October 28, 1948, wherein the Nassifs admitted the encroachment — which was described in detail;
 
 [8]
 
 agreed that title to the land was in Mrs. Cicardo and her children, renounced the acquisition of any rights by “prescription, usufruct or otherwise,” and
 
 *227
 
 recognized the right of the owners to compel removal of the building “should occasion arise.” We cannot conjecture what adjustments would have been necessary in the event of the property being acquired by a willing purchaser from a willing seller.
 

 The contention of counsel for the defendant that it was error for the trial judge, in making the award, not to consider the items of moving the store and equipment to another location, i. e., $506.25 for the necessary packing, crating, loading and unloading, plus a transportation cost of $247 for moving the same any distance up to seven miles, totaling $753.25, and the value of the permit to sell liquor in this particular residential zone without competition for an area of three and a half blocks, is without merit, for such claims are considered as damnum absque injuria, particular sacrifices which society has the right to ask for the public good. See McMahon v. St. Louis, Ark. & Tex. R. Co., 41 La. Ann. 827, 6 So. 640. In that case it was aptly observed: “Prior to the constitution of 1879 the organic law of this state, like that of all the states of this Union, simply provided that ‘private property shall not be taken for public purposes without adequate compensation,’ etc. Under this rule, in absence of other special provisions, a taking of the property was a condition precedent to liability, and the measure of compensation due was the value of the property taken. Mere consequential damage to property, when the property itself was not taken, was not recoverable, and much less any damages resulting to individual owners, in the way of discomfort, inconvenience, loss of business, and the like. All such injuries, inasmuch as they resulted only from the exercise by another of his legal right, were damna absque injuria.
 

 “The article 156 of the present constitution,
 
 [9]
 
 in providing that ‘private property shall not be
 
 taken
 
 nor
 
 damaged
 
 for public purposes without adequate compensation,’ etc., only extended its protecting shield over one additional injury, and required compensation, not only for property taken, but also for property damaged.
 

 “As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages the measure of compensation is the diminution in the value of the property.
 

 “There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been done to the property, i. e., to its value for rental and sale. Mere consequential inju
 
 *229
 
 ríes to the owners, arising from- discomfort, disturbance, injury to business and the like, remain, as they were -before, damna absque injuria, — particular sacrifices which society has the right to inflict for the public good.” 41 La.Ann. at pages 829-831, 6 So. at page 641. (Emphasis supplied.)
 

 For the reasons-assigned, the judgment appealed from is amended by increasing the amount from $7,500 to $8;000 and, as thus amended, the judgment is affirmed at plaintiff’s cost.
 

 [1]
 

 . Also named as • defendant was Habib Nassif, the husband of Mrs. Mary M. Nassif; however, the judgment below decreed Mrs. Nassif to be the sole.owner of the property as of the date on which suit was instituted, and she. alone has , appealed..... ... ...
 

 [2]
 

 . The District Court assessed the value of the property at $8,000 but deducted $500 because of the fact that defendant’s • building encroached . bn adjacent land.
 

 [3]
 

 . Two were called by the plaintiff, three by the defendant.
 

 [4]
 

 . One of plaintiff’s witnesses also made this computation; estimating what could be anticipated by way of income to a purchaser of the property for investment purposes, he placed rental income from both sides at $90 per month, and after deduction of depreciation, upkeep, taxes and insurance, and possible loss of rentals, arrived at a fair market value of $7,000.
 

 [5]
 

 . The basis of this computation was a so-called “pay back” of two and one-half times the net annual return from the property; this is said to be an accepted means of computing business value from an investment standpoint.
 

 [6]
 

 . The trial judge noted certain discrepancies; in an analysis of the testimony be observed that while the defendant’s experts, in computing the value for investment purposes, estimated the business as a going concern to have netted an annual income of $5,200 a year, actually, based on Mrs. Nassif’s 1953 income tax return, of record, the net income, after deduction of overhead and of salaries in the amount of $2,400 for both Mr. and Mrs. Nassif’s services, would not have exceeded $923 per year from the business itself, exclusive of rent from the cafe. As to the latter item, the judge noted that the rental of $55 per month included the use of a beverage box, cash register, and large pedestal fan.
 

 [7]
 

 . This valuation was reached after the trial judge, at the request of both the plaintiff and the defendant, viewed the premises.
 

 [8]
 

 . The description is: “ * * * on the front on Reed Avenue, our building extends a distance of approximately three inches on your property, going back a distance of about 39 feet. In the rear, our building is over on your line approximately two feet and two inches a distance of approximately 18 feet 7 inches.”
 

 [9]
 

 . The reference is to the Constitution of 1879, the provisions of which were substantially the same as in the Constitution now in force, that of 1921, providing: “* * * Except as otherwise provided in this Constitution, private property shall not be
 
 tdlcen
 
 or
 
 damaged
 
 except for public purposes and after just and adequate compensation is paid.” Art. 1, Sec. 2. (Emphasis ours.)