For the reasons assigned we conclude that our decree is correct.

101 So.2d 450

### STATE of Louisiana, Through the Department of Highways.

v.

### Mrs. Josephine MORTALLARO, Wife of Salvatore TRAMUTA and Salvatore Tramuta.

No. 43427.

March 17, 1958.

W. Crosby Pegues, Jr., D. Ross Banister, Baton Rouge, Howard W. Lenfant, New Orleans, for plaintiff-appellant.

Max M. Schaumburger, Dudley Yoedicke, New Orleans, for defendants-appellees.

SIMON, Justice.

The State of Louisiana, through the Department of Highways, under LSA–R.S.

48:441 et seq., instituted two suits [1] against the defendants herein for the expropriation of property belonging to them and lying in the right-of-way of the approaches to the new Mississippi River Bridge at New Orleans. These suits were consolidated for trial on the merits where the sole question presented is the market value of the property taken. The right of and the necessity for the Department of Highways to expropriate the property was not contested.

The subject property expropriated consists of two parcels of ground situated in the First District of the City of New Orleans, in Square 359, bounded by Freret, Clio, Howard and Calliope Streets. The larger parcel is designated as Lot 23, forming the corner of Calliope and LaSalle (Howard Avenue) Streets, measuring 25 ft. 4 in. front on Calliope Street, by approximately 80 ft. in depth and front on LaSalle Street. The smaller parcel is designated as Lot Part 23, commencing approximately 80 ft. from the corner of LaSalle Street and measuring thence 33 ft. in width and front on LaSalle Street, by a depth of 25 ft. 4 in. between equal and parallel lines. The buildings and improvements on the large parcel of ground bear municipal number 2300 Calliope Street, and consist of a commercial building at the corner of LaSalle and Calliope Streets consisting of a grocery, bar and restaurant on the ground floor operated by the owner in addition to an upper story occupied by the owner as a residence. The improvements and building on the small parcel of ground bear the municipal number 1113 LaSalle Street and consist of a single three-room dwelling occupied as a residence by the owner's daughter.

All of this property bears the zoning classification of "L-Industrial" which is an uncommon zoning classification, permitting practically unrestricted use of the property, a classification covering only 6.9 percent of the zoning in New Orleans. Notwithstanding this classification, the property has been used as a part of and consistent with the mixed residential and commercial neighborhood, inhabited by white and colored persons.

Plaintiffs contended that the value of the entire property at the time of the expropriation was $22,450, $17,750 being the alleged value of 2300 Calliope Street, and $4,700 being the alleged value of 1113 LaSalle Street. On the other hand, the defendants claim the value of 2300 Calliope Street to be $20,200 and 1113 LaSalle Street $5,300, or a total of $25,500.

1. Two separate suits, the instant suit and State of Louisiana through the Department of Highways v. Mortallaro, 234 La. 750, 101 So.2d 453, were filed because of the fact that the properties expropriated were acquired in two separate parcels and later united and treated as one parcel by the same owners, the defendants herein.

The trial judge valued the entire property at $25,000, adjudging the market value of 2300 Calliope at $19,900, and the market value of 1113 LaSalle Street at $5,100. Plaintiff appealed. Hence, the only issue before us is the correctness of the valuation, which presents solely a question of fact.

In the recent case of State of Louisiana through the Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21, involving the value of property expropriated in connection with the construction of the Mississippi River Toll Bridge at New Orleans, we recognized and applied the following fundamental rule relative to the ascertainment of values of property expropriated:

"LSA–C.C. Art. 2633 provides the basis for determining the value of property expropriated as follows:

" 'In estimating the value of the property to be expropriated, the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work.'

"Under said article it may be generally stated that the criterion to be applied in arriving at the basis for assessments of the 'true value' of prop-

erty in expropriation proceedings is the market value or the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser, taking into consideration all available uses to which the land might be put as well as all factors which lead to a replacement of the loss caused by the taking. This means substantially that the owner is placed in as good a position pecuniarily as he would have been had his property not been taken. Housing Authority of Shreveport v. Green, 200 La. 463, 8 So. 2d 295; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So. 2d 853; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445; Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So.2d 37."

In the recent case of State of Louisiana through the Department of Highways v. Sauls, 234 La. 241, 99 So.2d 97, 101, we recognized the difficulty experienced in the application of rules with respect to a determination of fair market value in expropriation proceedings and said:

"As has often been said by this Court, the best guide is evidence of sales of similar or comparable proper-

ties in the vicinity. We have also stated that sales to a condemning authority in advance of expropriation are not controlling, though they may be considered; that rental income derived by the owner, and value of business conducted upon expropriated premises, while not the sole measure of compensation, may be considered along with other factors in arriving at the market value; that various considerations, such as location, assembly or plottage value, corner influence, and best use, are of great importance in fixing market value; and that it is unrealistic to discard numerous sales in the vicinity which commanded higher prices, terming them 'monopoly sales' which did not reflect a price between a willing buyer and a willing seller." Mississippi River Bridge Authority v. Simon, 232 La. 668, 95 So.2d 114.

In the instant case four eminently prominent realtors of New Orleans testified as to the fair market value of the subject property. Messrs. E. Holland Johnson and Eugene Aschaffenburg, expert witnesses for the plaintiffs, appraised the market value of the property at the time of the expropriation at $17,750 for 2300 Calliope Street and $4,700 for 1113 LaSalle Street, or a total of $22,450, which was the amount deposited in the registry of the court in connection with this expropriation proceed-

ing. Messrs. Phillip J. Zollinger and Cliff Probst, expert witnesses for the defendants, placed the market value of the property at the time of the expropriation at $20,000 and $20,200, respectively, for 2300 Calliope Street and $5,300 for 1113 La-Salle Street, or totals of $25,300 and $25,-500. From the explanations of the methods of calculations available for use by these appraisers in respect to this particular property such as the comparable method, the reproduction method, and the income method, they concluded that the income method seemed to be the best and most equitable method in arriving at a fair market valuation.

The property as a whole is considered primarily investment property because of its having both commercial and residential characteristics which are not altered by the occupancy of the owner and his family.

The consensus of opinion of the experts is that though these properties have been appraised as separate parcels said property would be more desirable and merchantable as one parcel. All of the experts conscientiously attempted to arrive at a valuation that a willing buyer would have paid to a willing seller.

The trial judge, after considering the photographs, the evidence and the property as a whole, fixed the market value of the property as above stated, based on the income method of appraisal, as well as what

he considered from the entire record a willing buyer would pay a willing seller.

 Plaintiff assigns error to the statements made by the trial judge during the course of the trial as well as in his reasons for judgment which, they contend, indicate that in fixing the value of the property the trial judge was influenced by the fact that these defendants through this expropriation were being uprooted from business, home and familiar surroundings during their advanced years. We have read the record and the written reasons assigned by the trial judge and, though the trial judge commented on the fact that defendants were losing their home and business and further that if there were any equities involved in this case that said equities should be in favor of the defendant, we find a conscientious and justiciable attempt by the court to arrive at a true market value, and we find no error in his findings which we quote as follows:

"Considering the photographs, the evidence, and the property as a whole, the Court is of the opinion that $25,000.00 for the whole would be what would be in the mind of a willing seller and a willing buyer.

"From the evidence, the Court concludes that the rental value has a mesne average of approximately $230.00 per month, Mr. Johnson testified to $190.00; Mr. Aschaffenburg testified to $200.00; Mr. Probst testified to $275.00; Mr. Zollinger testified to $255.00. These amounts added together total $915.00, which, divided by four, gives a figure of a little more than $229.00, or, say, $230.00 per month.

"The $25,000.00 just mentioned will be divided for judgment purposes as follows: $5,100.00 for 1113 LaSalle Street and $19,900.00 for 2300 Calliope Street, the home and the source of revenue of the defendants."

For the reasons assigned, the judgment of the trial court is affirmed.

101 So.2d 453