PONDER, Justice.
This appeal involves only a question of quantum as to the value of the property of defendant which was expropriated by the plaintiff. There was judgment in the lower court for the sum of $54,500, from which judgment the plaintiff has appealed. Defendant answered the appeal, asking that the award be increased to the sum of $62,-500.
The property involved in this suit, consisting of two lots with improvements, forms the corner of South Rampart and Calliope Streets in the square bounded by South Rampart, Calliope, Clio and Dryades *459 Streets. The property is 56 feet front on South Rampart and 127 feet 10 inches in depth on Calliope Streets. In the two-story corner building was a colored bar-room, a colored beauty parlor, and there were eighteen rooms which were rented by the week. The building on the inside lot was one-story and was rented and used as a colored bar-room. The buildings were frame construction, as evidenced by the photographs contained in the record, with cardboard partitions separating the rooms and the property was in a most deplorable condition. The inside building was of the cheapest construction.
Plaintiff filed suit for the expropriation of the property according to State Project Number 283-08-11, estimating that the property was worth the sum of $50,250 and accordingly deposited this amount into the registry of the court. The defendant answered alleging that the property was worth the sum of $80,000 and prayed for judgment in that amount.
The two experts who testified on behalf of the plaintiff set the values as follows :
Mr. Eugene A. Aschaffenburg ..$49,500.00 Mr. E. Holland Johnson.$50,250.00
Mr. Aschaffenburg testified that his estimate was based on comparable sales in regard to rental value and return on capital investment. In arriving at a figure he testified: “I decided to give the right rooms of the second floor a valuation of $1,000.00 per room or $8,000.00 and the ten rooms on the first floor a valuation of $800.00 per room, or $8,000.00, total value of $16,-000.00 for the residential portion of the property which added to the $33,500.00, which was arrived at by capitalizing the commercial rent at twelve per cent, and gave a total value of $49,500 for the property.” As to comparable sales, Mr. Aschaf-fenburg compared the defendant’s property to the Kelly property, located on the corner opposite the defendant’s property, which sold for $7.95 per square foot and fronted 32 feet on Rampart by a depth of 127 feet 10 inches, and the DiCicco property which adjoins the Kelly property, fronting 63 feet on Rampart by a depth of 127 feet 10 inches, and which sold for $5.68 a square foot. By using the Kelly property, although this property consisted of a two-story brick building in apparently excellent condition, Mr. Aschaffenburg arrived at a valuation of $30,488 for the corner lot of defendant, comprising 3,835 square feet (30 feet front on Rampart by a depth of 127 feet 10 inches) at $7.95 per square foot, and $19,489 for the inside lot of defendant comprising 3,433 square feet (26 feet 11 inches front on Rampart by a depth of 127 feet 10 inches) at $5.68 per square foot, for a total valuation of $49,987. The DiCicco property was also in excellent condition, and Mr. Aschaffenburg testified that these two properties which he had examined and used as comparables were in much better condition than the defendant’s property. Mr. Aschaffenburg arrived at his estimate of $49,500 as a result of the gross capitalization rate method and he testified that the square footage basis is not the correct basis since the value of the improvement must be taken into consideration, such as the condition of these improvements, and their quality, in order to determine the relationship between the improvements on one property, and the improvements on the comparables. He explained that his reason for capitalizing the commercial portion of this property at twelve per cent in this instance is that the older the property the greater the maintenance cost and the greater the depreciation, hence the greater the capitalization rate. He noted that these buildings were in a deplorable condition and did not meet the Minimum Housing Standards.
Mr. E. Holland Johnson used the same method as Mr. Aschaffenburg but arrived at an appraisement of $50,200. He took the estimated residential rental at $5,010 and capitalized it at thirty per cent which gave a value of $16,700 for the residential portion of the property to which he added $33,500, the value of the commercial por *460 tion capitalized at 12 per cent making a total of $50,200.
Defendant introduced the testimony of two expert witnesses who set the values as follows:
Mr. Cliff Probst .$61,800.00
Mr. Omer F. Kuebel.$57,800.00
Mr. Kuebel used the building residual method. The figure of $57,800 is made up of $27,830 for the buildings and $30,000 for the land, making approximately $7.95 a square foot. Mr. Kuebel later in his testimony stated that the property was worth $62,350, based on added income which the defendant could have received had he rented the portion he used as a warehouse for himself.
Mr. Cliff Probst arrived at a valuation of $61,800 which he testified came to $8.50 a square foot. He based his estimate on a consideration of comparable sales then supported the estimate with the net income from rents and considered nothing else. He testified that he had acquired the rental figures from defendant’s accountant and they show that in 1952 the net return was $4,306.93; in 1953 it was $6,188.72; in 1954 it was $5,904.62; and in 1955 it was $4,163.01. As to comparable sales he used the Kelly property, the Tramuta property, the Ragusa property and Lally property. In his estimate he gave the same price per square foot to the inside lot of defendant’s that he gave to the corner lot. He never examined the Kelly property except from the outside but he testified that he figured that the defendant’s property was on the better side of the street in comparison to the Kelly property and that defendant had seventy-seven per cent more ground than Kelly which gives it an advantage and hence he figured at $8.50 per square foot for the entire property since Kelly had received $7.95 per square foot. He testified that he did not consider the DiCicco property as a comparable although he gave no plausible reason for his refusal to consider it in his appraisement.
From a reading of the evidence on the comparables offered by Mr. Probst it is evident that they were not at all the same kind of property but very much higher in value because of the improvements located thereon. The Lally and the Kelly buildings were brick. The Tramuta, the Lally, and the Ragusa properties were occupied by the owners as residences and as their places of business, hence the court took this into consideration in arriving at a fair value. (The Ragusa property was valued at less than $7.60 per square foot. See State v. Ragusa, 234 La. 51, 99 So.2d 20.)
It was brought out on cross-examination that a corner on Calliope Street was sold for $5.68 per square foot with the building; the corner of Calliope and Baronne sold for $2.50 per square foot and the property just across the street from defendant was sold for $3.07 a square foot but none of these were used by Probst as compara-bles.
Mr. Probst averaged the rentals at $5,-142.82 then included potential rents from space that was used for storage by the defendant (as Mr. Kuebel did in his second appraisement) which would add $600 a year.. He used six and eight per cent capitalization which would be, he testified,, $85,680 at six per cent and $71,-760 at eight per cent. But he testified that this was $10,000 more than he would “put on it” so he therefore arrived at his estimate of $61,800 which he says is reasonable.
It is the contention of the appellant, Department of Flighways, that it was error for the trial court to award $54,500. Appellant points out that under the provisions of LSA-R.S. 48:453 the burden of proving his claim, that the riiarket value of the property as deposited by the Department of Highways is not correct, is on the defendant. Appellant cites the case of Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193 as authority for the contention that the compensation to which an owner is entitled in expropria *461 tion proceedings is the market value of the property, that is, what a willing buyer will pay to a willing seller under usual and normal circumstances. Appellant urges that recent sales of comparable property are the best criteria of value in expropriation proceedings. Citing City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; State v. Dowling, 205 La. 1061, 18 So.2d 616.
There is no doubt that it has been the jurisprudence of this Court that comparable sales are the best criteria but the question arises as to which appraisal is based on comparable sales.
In the present case the record reflects that the most comparable sales are those of the Kelly property and the DiCicco property, the Kelly property is located on the opposite corner at 1101 Rampart Street with a front footage of 32 feet and the same depth as the defendant’s property. The lot next to the Kelly property is the DiCicco property, fronting 63 feet on Rampart with the same depth as defendant’s lots, and like the defendant’s property has a bar-room located thereon and is Negro tenement property. The Kelly property is in much better condition than the defendant’s property since it is a two-story brick building and it sold to the Department of Highways for the sum of $7.95 per square foot. The DiCicco adjoining inside lot with a larger building also in better condition sold for $5.68 per square foot. None of the other properties used by Mr. Probst were comparables and therefore must be disregarded.
It would seem to us that the most favorable valuation that could be placed on defendant’s property would be the amount deposited by the plaintiff, $50,250. The defendant’s property could not be considered as valuable as the Kelly and the DiCicco property. He is nevertheless receiving more per square foot for his property than was given for the Kelly and DiCicco property in spite of the fact that the defendant’s improvements were far less in value than those on the Kelly and DiCicco property.
For the reasons assigned, the amount awarded by the judgment of the lower court is reduced to the sum of $50,250 and, as thus amended, the judgment is affirmed.
HAWTHORNE, J., takes no part.