AYRES, Judge.
This is an action in expropriation wherein certain of defendant’s property was taken for street right-of-way purposes for incorporation into the State highway system.
From an award of $2,040 in excess of the value fixed by preliminary appraisals of the Department of Highways, as just compensation for the property, the State appealed. The defendant has answered the appeal seeking a further increase in the award.
In stating the issues, and in its appraisal and evaluation of the evidence, the trial court, in an original opinion and in an *852 opinion on an application for rehearing, stated:
“Plaintiff expropriated a portion of Lots 9 and 10 of Block One of the City of Shreveport by judgment dated December 5, 1957 and deposited in the registry of the court the sum of $3,488, the estimated value of the following:
$2651. Value of land
Value of temporary servitude to CO co
Severance damages CM O i-o
Total $3488.
“The defendant appeared herein and denied that plaintiff had paid the actual cash value of the property expropriated, and averred that the property expropriated had a value of $7,952.70, and that the remainder of his property will be damaged in the amount of $4,362.70, for which he prays for judgment.
“The two realtors who appraised the property for plaintiff valued the land at 50 cents per square foot and the severance damage at $502; but on trial of the case, testified that since the grade of the proposed highway was not lowered as contemplated, and since the completed highway is at ground level, no severance damage has occurred.
“Defendant, who is a long-time realtor, testified in his own behalf that the property expropriated had a value of $1.50 per square foot, and that the severance damage is $4,362.70. Another realtor testified on behalf of defendant, and corroborated defendant’s estimates, based on sales remote from the property expropriated, and did not compare the property expropriated with the adjoining property which had been sold in 1952 by this defendant. We feel that we cannot give much weight to his testimony.
“Defendant owns Lots 9 and 10 of Block One, measuring 40 by 150 feet each, running north and south, abutting the T. & P. Railroad on the north, which railroad was on an embankment 12 or 15 feet high. The south end of the property bor« dered on an unimproved alley. Lot 9 was bounded on the west by Common Street, which was a paved thoroughfare which came to a dead end at the railroad embankment aforesaid. (The property expropriated was for the purpose of widening Common Street to a four-lane highway with an underpass under the T. & P. Railroad.) The property is located four blocks north of Texas Street, which is the main business street in the City of Shreveport. Common Street is at the head of Texas Street and runs north and south through the city. Leaving Texas Street and going north, Common Street crosses Travis Street, which contains some business houses to the east, then the next street is Fan-nin, which has fewer business establishments, then Caddo Street, which is a truck route through the City, and Common Street is on the edge of a blighted area, inhabited mostly by negroes. Then you reach defendant’s property, which is in an area devoted mostly to negro residences; except in the block to the west there is a macaroni factory, and some two blocks to the east is a warehouse and other business establishments which are near to Market Street, the only outlet northward from the City of Shreveport that was then in existence.
“The property expropriated contains 5301 square feet, which plaintiff’s appraisers valued at 50 cents per square foot, basing their opinion on the fact that Lots 11, 12, 13 and 14 sold in 1952 for $3,000 per lot, or 50 cents per square foot. The evidence shows that Lots 11, 12 and 13 were owned by defendant and were sold to Southwestern Gas & Electric Company for $10,000, instead of the $9,000 shown by the recorded deed.
“This is the first time in our experience that we have heard anyone testify that an inside lot, with no outlet to a street other than an unimproved alley was worth as much as an outside lot lying alongside a paved street (where the property owner no *853 •doubt had to pay a portion of the paving of said street). The defendant, who sold Lots 11, 12 and 13 in 19S2 at 55 cents per square foot, did not satisfy us that his adjoining two lots had increased in value in the past eight years to $1.50 per square foot.
“Therefore, we find ourselves in disagreement with both sides of this controversy. In order to arrive at a judgment herein we have to constitute ourself as a chief appraiser, and in doing so we admit that our valuation is an arbitrary one.
“The evidence shows that at the time the expropriation took place, the State’s appraisers considered the best use of the property to be that of erecting negro houses, but admit that since their appraisal was made, the zoning ordinances are enforced, and negro houses could not now be built upon said lots. Defendant on the other hand, testified that the best use of the property at the time of the expropriation would have been the erection of a warehouse. The two lots together, measuring BO by 150 feet, would lend themselves to -the erection of most any kind of building thereon. But since the expropriation has taken place, it leaves defendant with a lot .37.23 feet wide at the north and 53.15 feet wide at the south end, and leaves us un•certain as to what kind of commercial or industrial use could be made of the property.
“If Lot 14 was worth $3,000 in 1952, and Lots 11, 12 and 13 were worth $10,000 at that time, and considering that property has increased in value in Shreveport in the past eight years we are of the opinion that Lot 10 had a value of $3500 and Lot 9 had a value of $5,000. Hence Lot 9 had .a value of 831/3 cents per square foot, which makes the 53.01.8 square feet expropriated worth $4,318.16. We are of the opinion that since Lot 10 has been reduced in width .at the north end, and the property left being irregular in shape, the severance damage should be fixed at 25% of the value ■of said lot or $875.
“Plaintiff also expropriated a servitude adjoining the property expropriated, and a value of $335 was allowed for said servitude, about which there is no contention, and we allow that su». Hence, our judgment is as follows:
Value of property expropriated $4318.
Value of servitude 335.
Severance damage 875.
Total $5528.
Less amount deposited 3488.
Or balance of $2040.
♦[» »}» «j* s{s
“In our original opinion we fixed the value of the property expropriated at $4318 plus severance damage of $875, and the value of the servitude at $335, the latter amount not being in contest. Plaintiff and defendant have each filed an application for rehearing, and the plaintiff argues that our judgment was too high and the defendant argues that our judgment was too low which, in the ordinary course, would authorize us to overrule the motions without further comment.
“The plaintiff, in brief, points out nine alleged errors committed by the Court, one of which is to the effect that the Court erred in arbitrarily fixing values admittedly not based upon the testimony of either side.
“It is true that unless a court adopts a value as fixed by either the plaintiff or the defendant, the value fixed by the court appears to be arbitrarily fixed. But that is not necessarily true. We took the facts in the record and found a value between that fixed by the plaintiff and that claimed by the defendant. We set out in our opinion the basis on which we fixed value.
“Considering the case now from another angle, and eliminating any severance damage, as testified to by the State appraisers, and then stating, in the words of the Supreme Court in the case of Board of Levee Commissioners [etc.] v. Jackson’s Estate, 113 La. 123, 36 So. 912:
*854 “ 'The value of the property testified to by the witness varies from a very small amount to a considerable sum. We shall endeavor to avoid both extremes, the high and the low, testified to by the witnesses of the respective parties. Upon an average basis we find that $22,500 would be the value,’
we, then, decide that, as plaintiff’s witnesses fixed the value of the property, expropriated at 50 cents per square foot, and defendant’s witnesses fixed the value of the property expropriated at $1.50 per square foot, the average is $1.00 per square foot. Hence, the 5301 square feet expropriated, at $1.00 per square foot, would be $5301, plus $335, value of servitude, or a total of $5,636. This, then, would be $108 more than the judgment rendered.
“We are of the opinion that our original opinion herein comes nearer being a correct judgment, and for these reasons the applications for a rehearing are both denied.”
Of the several specifications of error assigned by the State, three appear worthy of consideration. The State complains primarily that the district judge rejected the appraisals of the expert witnesses called by both the State and the defendant, and placed an arbitrary value upon the property expropriated. From our review of the record and the aforesaid findings and conclusions of the trial court, the court, in our opinion, fully considered the testimony of all of these witnesses. The witnesses for the State placed a value of 50 cents per square foot upon the property expropriated; whereas the witnesses for the defendant assigned a value of $1.50 per square foot. The award made by the trial court was predicated upon a conclusion that the property taken had a value of 83cents per square foot. This represents a figure less than the median between the opinions of the experts’ awards made after a consideration of the testimony of all the experts had been approved.
In State Through Department of Highways v. Tolmas, 238 La. 1, 113 So.2d 288, 291, the court stated:
“The trial judge did not assign written reasons for his judgment awarding the defendants $16,479 for the instant property. From an examination of the record, we deduce that he averaged the appraisal of plaintiff’s witnesses ($2.35 per square foot) and that of defendants’ appraisers ($3.50 per square foot) and arrived at a rounded figure of $3 per square foot. He employed the total square footage to which defendants’ appraisers had testified (5,493 square feet), which, when multiplied by the $3.00 per square foot, gave a product of $16,479.
“Appellant contends that there was no competent evidence to support the judgment of the trial court. * * * ”
* if: * j¡í
“There is a $6,000 difference between the price demanded by defendants and the price offered by plaintiff for the property herein involved. The trial judge’s award represents a median. ‘As a practical result, the value fixed by the judge is equitable and gives effect to the evidence on both sides, as the award is approximately one-half of the total of the combined appraisal * * *.’ State v. Ferris, 227 La. 13, 78 So.2d 493, 496.”
In the instant case, the trial court analyzed and gave effect to the testimony of all the witnesses. We find no error in this procedure.
The State further complains that the approach employed by the trial court allows the defendant a profit for the property expropriated. We find no sound basis for this complaint. The basic right of an owner of private property to be protected from the action of the Government is preserved in both State and Federal Constitutions. Appropriate is the provision of the Louisiana Constitution, Art. 1, § 2, L. R.A., which provides:
*855 “No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” (Emphasis supplied.)
In accordance with this basic principle, the rights of property owners to the full, complete, and adequate compensation for property taken is well established in the jurisprudence of this State. For instance, it was stated in Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295, 298:
“ * * * The compensation to which the owner is entitled is the full and perfect equivalent of the property taken — in other words, the loss caused to him by the taking. ‘This means substantially that the owner shall be put in as good position pecuniarily as he would have been in if his property had not been taken’. 18 Am.Jur., § 240, p. 874. This is the rule established long ago and consistently adhered to by the Supreme Court of the United States.”
Nor do we find any merit in the complaint that defendant was permitted to testify and establish the true consideration for property theretofore sold by him in the absence of a correct statement shown in the instrument of conveyance, particularly in view of the fact that the internal revenue stamps attached to the document evidenced such true and correct consideration. The general rule is that the true cause or consideration of a contract may be established by parol testimony. LSA-C.C. art. 1894.
Nor do we find any basis warranting an •increase in the award. We are not impressed with the argument that a mere difference in a zoning classification of this property on one side of a street from property situated across the street, in the absence of the former having been put to .some use under its classification, warrants or justifies a finding, on that account, of a greater value. In this connection, it may be pointed out that, in the case of State v. Gras, La.App. 2d Cir., 1961, 131 So.2d 628, property situated diagonally across the street, but on the corner of Common and Caddo Streets, was found to have a value of 75 cents per square foot.
Also, inasmuch as an increase in the severance damage to the remainder of defendant’s property was predicated upon a basis of a valuation of $1.50 per square foot, which the court declined to approve, this contention is likewise without merit.
We discern no manifest error in the conclusions and award made by the trial court. Hence, the judgment appealed is affirmed at plaintiff-appellant’s cost.
Affirmed.