TATE, Judge.
The plaintiff highway Department expropriated the entire lot owned by the defendant landowners, upon which was situated their residence and certain outbuildings. The uncontradicted evidence indicates that the value of the land was $3,750. The controversy in this litigation concerns the correct valuation to be awarded the defendant landowners for their home and the other improvements on the expropriated lot.
The plaintiff Department appeals from the trial court award to the plaintiffs of $9,745.- *609 60 as the value of these improvements, being based on expert testimony that this is the reconstruction cost thereof, less a deduction for depreciation in value between the original construction and the taking of the improvements. The Department argues that the award for these improvements should be reduced to $6,250, which was their value according to the testimony of the Department’s appraisers, based on use of a market date approach based on allegedly comparable sales.
Primarily, the Department contends that the trial court erred in rejecting valuations based on comparable sales and in arriving instead at a value based upon replacement cost.
The general legal principles applicable are not disputed.
The measure of compensation for expropriation purposes is the market value of the property taken, which is ideally the mutually-agreed price to be arrived at in a voluntary sale between a seller willing to sell and a buyer willing to buy considering all possible uses of the property. Comment, “Expropriation — A Survey of Louisiana Law”, 18 La.Law Rev. 509, 538-540 (1958). Generally, three approaches to market value are utilized, (a) the market data approach based on comparable sales, (b) the reproduction cost approach, and (c) the capitalization or income approach. Id. at 18 La.Law Rev. 547.
Under the jurisprudence, sales of similar properties in the vicinity, that is “comparable” sales, furnish the best guide to determine the market value of the property taken. State Through Department of Highways v. Hub Realty Co., 239 La. 154, 118 So.2d 364; State Through Department of Highways v. Stoer, 238 La. 718, 116 So. 2d 498; State Through Department of Highways v. Sullivan, 235 La. 314, 103 So.2d 458. As the cited decisions note, when evidence of recent truly comparable sales is not available, then the market value of the property must be established by a consideration of other facts and circumstances and by other means.
In the absence of comparable sales, an alternative method of establishing market value may be by consideration of the testimony of experts which is based upon the capitalization approach. Orleans Parish School Board v. Paternostro, 236 La. 223, 107 So.2d 451. Another alternative method may be by reference to expert testimony as to the reproduction cost of the improvements, less depreciation (plus the value of the land itself, the latter being established by the market data approach). State Through Department of Highways v. Barber, 238 La. 587, 115 So.2d 864; State v. Sauls, 234 La. 241, 99 So.2d 97; Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40.
Replacement cost alone cannot be a proper method of calculating the value of improvements on property taken, however, for the inquiry is directed at the market value of land and improvements as an entity. Mississippi River Bridge Authority v. Curry, 232 La. 140, 94 So.2d 9; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; Texas Pacific-Missouri Pac. Terminal R. v. Rouprich, 166 La. 352, 117 So.2d 276. See 4 Nichols, Eminent Domain (4th Ed., 1962), Section 12.313; Id. at 5, Section 20.1. Thus, for example, deduction from the total reconstruction cost should be made for the depreciation in market value prior to the taking occasioned by wear and tear or obsolescence of the improvements. See State v. Barber, State v. Sauls, and Rapides Parish School Board v. Nassif, cited above.
As summarized in State v. Barber at 115 So.2d 866:
“ * * * Where there have been no sales of similar property in the vicinity of the property sought to be expropriated, other circumstances and factors must be explored in order to discover true value. Among these other factors some considera *610 tion may be given to replacement cost less depreciation, provided it is reflected in the price the property would bring on the market at the time of expropriation.”
In the instant case, the residence had been constructed of high quality lumber, and it was kept modernized and in excellent condition. It was situated on a larger than average lot, with several good trees, excellently maintained.
To arrive at a valuation of this residence based upon comparable sales, the Department’s experts took into consideration the recent sales of several other properties in the neighborhood. The sales prices of each of these other transactions were used as a guide to the value of the present property by “adjusting” their value to that of the subject property, with relation to the differences between them in construction and styling of the residences, lot value and size and topography, the condition and relative ages of the residences, number of rooms and room arrangement, location with regard to street surfacing and neighborhood factor values, etc. For these comparative differences, a percentage increase or decrease was added to or deducted from the value of the comparable — the exact percentage used apparently ■ being a more or less arbitrary determination by the appraiser.
The trial judge concluded: “The Court just does not feel that the comparables used by the appraisers were true compa-rables.” The award was therefore made on the basis of the expert testimony as to the reproduction cost of the improvements, less a substantial deduction for depreciation.
We find no error nor abuse of discretion in the determination by the trial court that the market data approach was not the best method in the present instance of arriving at the market value of the present improvements. The alleged comparables needed so many adjustments because of their dissimilarities to the subject property, as to justify the conclusion of the trial court and of another expert appraiser that they were not true comparables.
Under the circumstances of this case, therefore, the trial court did not commit error in determining that the best method to determine the market value of the subject improvements was by taking into consideration their replacement cost, less depreciation; nor in arriving at the amount of the award by accepting the testimony of a local realtor and constructor as to the prevailing construction costs in the area and as to an appropriate depreciation rate. (Likewise, we do not find to be justified by the record an increase in the award, as requested by the defendants’ answer to the appeal.)
The plaintiff Department further complains that the trial court improperly discounted the evidence of one of its expert realtors by reference to the great discrepancy between his valuation of certain other property in other litigation, and the subsequent actual selling price of this other property. Able counsel for the Department contends that the trial court improperly took judicial notice of an act of sale which had not been introduced into evidence, without giving the Department the opportunity to explain the sale by amplifying evidence.
The Department may well be correct in this contention. Cf., Tate v. Gullett Gin Co. & Liberty Mutual Ins. Co., La.App., 1 Cir., 86 So.2d 698 (Syllabus 3); 31 C.J.S. Evidence § SO, p. 619. Nevertheless, we find it unnecessary to pass upon this question, since we have already concluded that the trial court did not err in rejecting the testimony of this expert and of the other Department expert on another ground, namely, because their valuations, based on the market data approach, did not afford the best guide under the circumstances of this case to the true market value -of the subject improvements.
For the foregoing reasons, the judgment of the trial court is affirmed.
Affirmed.