FOURNET, Chief Justice.
 

 This expropriation suit, instituted by the American Telephone and Telegraph Company to acquire a right-of-way and servitude covering a strip of land over various contiguous tracts owned by the defendants, East End Realty Co., Inc., Realty Holding Company, Inc., and R. E. E. de Montluzin Co., Inc. (real estate development corporations), the said strip measuring 16% feet in width and somewhat less than 10 miles in length and lying along the public highway formed in part by U. S. Highway 90 and in part by the' Chef Menteur Highway, for the purpose of constructing, maintaining- and operating its communication system (in this instance, the coaxial cable), resulted in. judgment in the district court for plaintiff, as prayed, conditioned upon payment of compensation to the defendants of 2%0 per square foot for each square foot of• area comprised in the right-of-way (a total' of 784,864 sq. ft.), or the sum of $19,621.60. Devolutive appeals from that judgment were perfected by both plaintiff and defendants. Pursuant to stipulation of counsel in which the defendants agreed not to appeal suspensively, the full amount of the award was deposited in the Registry of Court and fhe issue on appeal was restricted to the quantum of the award.
 

 The plaintiff’s contentions, in sum-, mary, are that the placing of the cable in such close proximity to the concrete pavement is merely the use of the highway right-of-way for communication purposes, one .of its intended uses, and does not constitute the imposition of an additional use or servitude, so that no compensation is due; in the alternative, should the Court decide that such use is an additional servitude, they seek to have the award reduced on the ground that it is excessive and unreasonable.
 

 On the other hand, the defendants claim that the award of the lower court is inadequate, contending that (1) they are entitled to the fair market value of the property, which they fix at 200 per square foot — to be applied to a total area of 1,-022,701 square feet (resulting in an award of $204,540.20), instead of 784,864 square feet, because of the possibility that the edge of plaintiff’s right-of-way, in its location with respect to the outer edge of the concrete pavement, leaves a 5 foot “lost” strip' between the highway pavement and the plaintiff’s servitude; (2) they should recover for damages to the abutting property, which amount should be assessed by the Court..
 

 The plaintiff’s contention that it owes nothing for the use of the property because, o.f its location along the highway, and that it has done all that is required of it under the laws of this State by obtaining a certificate. of convenience and necessity from the Director of State Highways, is clearly without merit. .The authorities .re-”.
 
 *537
 
 lied on, being pronouncements of courts of some of the other States, controlled by their statutory law or by rules of real property tenure foreign to our legal system, are not pertinent here. Even if it be conceded that a right-of-way had been previously granted to the Louisiana Highway Commission as to the entire length of the road (which is disputed as to a part), under the provisions of the LSA-Civil Code “he who has the servitude has no right of ownership in the part, but only the right of using it”, and “the soil of public roads belongs to the owner of the land on which they are made”. Article 658. The Constitution of Louisiana guarantees that “private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” Art. 1, § 2.
 

 We think that the plaintiff, by instituting these proceedings, demonstrated that it had little faith in the phase of its argument asserting that no compensation is due. While counsel have not abandoned their position in this respect, the sum and substance of their serious argument is that the only questions to be decided are whether the award should be increased, decreased, or maintained.
 

 The law is well settled that the amount due for private property expropriated for public purposes is its market value when taken, that is, the fair value between one who wants to purchase and one who wants to sell, under'ordinary and usual circumstances, plus ány damage caused by such taking, which includes damage to abutting property. La.Const.,1 Art. 1, § 2; supra; see Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914, and numerous cases cited therein.
 

 We are in accord with the trial judge’s views, expressed in his written opinion, that the record is barren of any evidence as to the market value for the right expropriated, with the exception of plaintiff’s evidence that it customarily pays $1 per rod for similar servitudes, and two Right-of-Way Agreements executed between two of the three defendants herein and the New Orleans Public Service, Inc., over the same contiguous tracts comprising the area on which the plaintiff’s servitude lies. One of these, confected in 1942, covers a strip of unencumbered land conforming to the shore line of Lake Pontchartrain, having a width of 120 feet and extending approximately 7 miles in length, for the construction, maintenance and operation of a 110 KV (overhead) Transmission Line, the consideration being $15,000 — which is said, upon computation, to represent a price of 4/10^ per square foot. The other, dated 1943, for a similar purpose but covering a different route, applies to a strip 80 feet in width, extending eastward, then southward, over defendants’ property, for a recited consideration of $12,075 — which is said, upon calculation, to represent a pay
 
 *539
 
 ment of
 
 2f,
 
 per square foot. Both documents contain the clause that “Grantors, their successors and assigns, do hereby surrender and waive all claims for damages arising from the construction, maintenance and operation of said 110 KV Transmission Line except for negligence as herein provided.”
 

 There is, additionally, testimony offered by Mr. de Montluzin, the President of all three defendant corporations, who estimated the value at
 
 20‡
 
 per square foot, but this is an arbitrary figure, -based on no facts. He also claims that the presence of the cable constitutes a hazard and will materially increase the costs of laying necessary utilities, such as water, gas and sewer mains, when the property is subdivided and developed — though no proof was offered in support.
 

 While the Right-of-Way Agreements with New Orleans Public Service present no absolute proof of the value of the servitude under consideration, they represent as close a gauge as the record provides. Account must be taken of the fact that the prices of 4/10^ and
 
 2‡
 
 per square foot were paid for rights-of-way on property not dedicated to any use, and while they covered swamp land acreage which is not so desirable, according to the defendants, as that along the highway, it is nevertheless to' be considered that the land covered by plaintiff’s- right-of-way was already burdened'with the highway servitude, and'because of the use to which that servitude was. dedicated, the use of the highway shoulders by the abutting property owners was practically limited to purposes of ingress and egress; on the other hand, the presence of the cable, buried some thirty inches below the surface, may subject the defendants in their development of the area to inconvenience and additional expense in laying of utility mains. When all things are considered we feel we are not bound by the amount of $1 per rod customarily paid by the plaintiff, and in view of the other evidence have concluded that
 
 2‡
 
 per square foot is fair and adequate. The argument that plaintiff should pay for an additional five feet of width over the entire length of the strip is without merit, because the defendants are being paid the full value for what was taken.
 

 The remaining claims made by defendants, being for supposed future damage to abutting property owners, are all based on fears, situations predicted in the event that the cable has to be dug up from time to time for the making of repairs; they claim that the property is now in process of development, lots are being sold for commercial purposes such as filling stations, and the value of the frontage is decreased due to the circumstance that pavement might have to be dug up and broken. There is no evidence of probative value to support this claim; moreover, these damages, which may arise in the future, are too speculative
 
 *541
 
 and uncertain to form the basis of a judgment as contemplated by law. Counsel for the plaintiff informed the Court during argument that it is customary in similar cases for the plaintiff to pay for such damages if and when they occur. We think, in the interests of justice, it is but fair and equitable that the rights of abutting property owners to recover for such damage be reserved in the judgment.
 

 The argument of counsel for the defendants that the evidence establishes that the servitudes granted for highway purposes cover only 2% miles, and that as to the other 7% miles of property taken for the highway there is no evidence of a grant by the defendants, adds nothing to their case because the plaintiff is paying them just compensation for the use of the land, and for such damage as they are able to show. None has been shown here.
 

 For the reasons assigned the judgment of the lower court is amended by (1) reducing the amount of the award from $19,621.60 to $15,697.28, and (2) specifically reserving to the defendants, their assigns or successors, the right to be reimbursed for such damages as may be caused by the plaintiff’s future conduct of its business 'in the construction, reconstruction, operation, maintenance, replacement and removal of its communication system; and, as thus amended, it is affirmed.