HAMITER, Justice.
 

 Nelo J. Hebert, the defendant in this expropriation proceeding, is appealing from •a judgment awarding him $3,400 for his property that was taken by the state for road purposes. Of such amount $1,500 represents the value of the land and $1,900 that of the improvements thereon.
 

 Complaining only of the court’s conclusion as to the value of the improvements, appellant urges that the total award should be increased to the sum of $13,500 (improvements $12,000 and'land $1,500). Appellee, in an answer to the appeal, asks that it be reduced to $1,000.
 

 
 *114
 
 Our careful study of the record does not convince us that the trial judge’s findings were manifestly erroneous.
 

 The expropriated land situated in the Village of Bourg, Terrebonne Parish, was a small lot that fronted 74 feet along Highway No. 69, which the state undertook to widen, and had a depth of 60 feet. Located thereon was what was left of a one story brick building measuring approximately 40 by 41 feet that was constructed by the Citizens Bank and Trust Company (now Citizens National Bank) of Houma in 1921 at a cost of about $13,000. Until 1933 one-half of the building was used for banking purposes ; subsequently it was vacant continuously. A physician occupied the other half until 1928; and thereafter for some years William Detiveaux rented and used it as a grocery store, he paying a rental of $15 per month. In 1940 the latter purchased the property for a consideration of $1,000 ($500 Cash and one note), and he continued his occupancy until April, 1943 when Nelo J. 'Hebert, the defendant • herein, purchased the land and improvements for $1,800 ($600 cash and one note of $1,200). Subsequent to that date no one occupied the building.
 

 On July 28, 1948 the Department of Highways of the State of Louisiana addressed a letter to the defendant in which the following was stated: “The Department of ' Highwáys will .construct some additional concrete pavement on State Route 69, Terrebonne Parish; in the vicinity of Bourg and will in connection therewith construct a new bridge over Canal Belanger.
 

 “The lot and the improvements thereon, including the brick building, which you purchased from Mr. William A." Detiveaux by Act of Sale dated April 19, 1943 and recorded in Book 135, Page 506, records of Terrebonne Parish, are practically all absorbed within the additional right of way required for the construction of the said bridge and highway improvements; and the Department hereby offers you the amount of $2,500.00 for all of said lot, including all improvements thereon.
 

 “The offer is based upon the Department’s determination of the fair market value of the property in its present condition. It is our understanding that you contemplate improving this property, but since this property will be acquired by the Department of Highways in the immediate future for the said highway department, it is requested that you refrain from effecting any improvement thereto while our negotiations with you are in progress.”
 

 The mentioned offer was not accepted, and this expropriation suit was instituted January 14, 1949.
 

 ’ At the time of the trial in February, 1949, the entire property was assessed at $800 and the building was in a very dilapidated condition. Except for the walls.of the bank vault, which- had remained installed, all in-
 

 
 *116
 
 side 'partitions were gone; practically all windows, window panes, doors and door frames were missing; some of the supporting timbers were termite eaten; and needed to render the structure usable were the installing of a whole new roof and the re-plastering of the ceiling and all inside walls.
 

 In reaching his conclusion respecting the value of the entire property ($3,400) the .trial judge, as his written reasons for judgment disclose, gave consideration to the values suggested by all of the witnesses produced, both lay and expert, they ranging from $1,000 to $13,500. However, he considered particularly important, and largely relied on, defendant’s purchase of the land and improvements in April, 1943 from William Detiveaux for $1,800, he noting that it was a sale between a willing seller and a willing buyer. And with that transaction in mind he reasoned that during the intervening five year period there had been a general increase in real estate values in the Village of Bourg of approximately 100 per cent, one of plaintiff’s witnesses having testified to that percentage of increase and another having recently opened a subdivision in the village which indicated the existence of some demand for land. Accordingly, he found the total enhanced value of defendant’s property to be $3,600. Then • from such amount he deducted the sum of $200, it representing an obvious depreciation- of the building over such five year period in which no repairs whatever had been made.
 

 The reasoning and conclusion, in our opinion, were justified. As a general’ rule, according to our established jurisprudence, “the measure of compensation to be awarded in proceedings of this kind is the market value of the property — that is, "’m price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. And most important in determining the market value are sales of similar or comparable properties in the vicinity.” Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541, 542, and cases therein cited. Here, the voluntary sale relied on by the trial judge affected the identical property involved. True, it was confected five years previous to the taking; nonetheless it was appropriate and important for consideration, proper allowance for enhanced value and depreciation during the intervening period having been made, as pointed out above.
 

 Contending for an increase in the value of the improvements from $1,900 to $12,000, appellant’s counsel cite and rely on Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295, 298 and Housing Authority of New Orleans v. Boudwine, supra, in the former of which this court stated: “In cases where there is no market value
 
 *118
 
 for a residence sought to he expropriated, the intrinsic value, or its value to the owner, must be taken into consideration * They direct attention, in this connection, to the testimony of their expert witnesses-— two building contractors — who stated that by expending $5,000 for repairs on the 'building it would be like new and have a value of $17,000; and they show that this defendant was contemplating, when expropriation occurred, the repairing and use of his property. Then counsel argue that, as -a consequence, the value of the property to this defendant was $12,000, for which amount he should have judgment.
 

 The Green and Boudwine cases do not appear to lend support to the contention and argument. In each, unlike the instant situation, no satisfactory market value was disclosed; further, the owner had repaired and improved the property within a reasonably short time prior to the expropriation, all of which placed it in very good condition ■ and primarily accounted for the court’s awarding the intrinsic or true value. Here, • a market value was shown; moreover, defendant’s contemplated repairing and reconditioning was never accomplished. The •contention and argument, hence, are without merit.
 

 For the reasons assigned the judgment .appealed from is affirmed.