On the Merits
The defendant-appellant claims that the plaintiff has not complied with the legal requirements for expropriation in that the necessity for the particular land was not shown. The evidence is clear that the proposed route for the protection levee was made according to the best engineering practices, and the testimony of Mr. William *291 Hadden, an expert and area engineer for the Department of Public Works, shows the necessity for the acquisition of the particular property in question.
The map showing the proposed location of the levee construction was made under the supervision of Hadden and the map is signed by Mr. Morgan, the district engineer, and approved by Mr. Myers, chief engineer, and also by Mr. Wimberly, director. Hadden stated that the survey was made where the Department of Public Works, through its engineers, thought was the best location. He further testified that the location shown on the map was the first place outside of the corporate limits of the Town of Golden Meadow where a location was found which could be utilized as a stabilizer base.
There is nothing in the record to support the special defense urged by appellant.
Quantum:
The measure of compensation to be paid the landowner in such types of proceedings as we have here is the fair market value of the property expropriated.
In State, Through Dept. of Highways v. Hebert, 227 La. 111, 78 So.2d 528, 529, our Supreme Court so stated:
“ * * * As a general rule, according to our established jurisprudence, ‘the measure of compensation to be awarded in proceedings of this kind is the market value of the property— that is, the price which could be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. And most important in determining the market value are sales of similar or comparable properties in the vicinity.’ Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541, 542, and cases therein cited * * *
Also see City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528 and Plaquemines Parish School Board v. La Grange Realty Co., Inc., La.App., 101 So.2d 634.
The petition alleges and the map attached thereto shows that the right of way in question is comprised of three different sections or parts which follow generally along a gravel road situated on the property of the landowner. The first section begins in the rear or western extremity of the property and proceeds in an easterly direction for about 1,900 feet ending at Point A-J on said map. This portion follows the meandering direction of the road and is 60 feet in width including the bed of the gravel road. This particular section of the right of way is low, saltwater marsh. The second section or part of the right of way is 30 feet in width and extends from Point B on said map to a point in the rear of buildings located on the property and marked D-H on the map. The third section is 15 feet in width including the road and extends from Point D-H to the highway that runs through the front part of the landowner’s property. According to the petition the area comprising the front portion of the tract now being used as a private road comprises an area of 0.175 of an acre; the other portion along the roadway comprises an area of 0.217 of an acre; the remainder is in the rear or marsh portion of the land and comprises an area of 3.365 acres.
The plaintiff introduced an expert who testified that the marshy portion of the right of way was fairly valued at $50 per acre. His testimony included the results of an examination by him of acts of sales upon comparable properties. Another witness for the plaintiff testified as to the nature of this portion of the right of way, as did the Mayor of Golden Meadow, Mr. Alexie Plaisance. This last witness stated this particular portion of the land had little value at present and was flooded at times, had no value whatsoever as to revenues. The record as a whole indicates there have in the past several years been very few or any sales of this type of property. The evidence of the defendant-appellant offered upon the value of this tract was not such as to establish its *292 market value as other than that shown by the plaintiff since the sales shown by the appellant were of property which was not marsh land. Consequently, as to this tract of 3.365 acres we are of the opinion that the evaluation of $50 per acre is correct.
The second portion of the right of way which covers that part of the landowners property from Point A-J to Point D-H on the map is not high land but could be utilized according to the evidence, without too much drainage. The expert witness of the plaintiff used comparable sales in arriving at a value of $333.33 per acre for this tract. The defendant offered no particular evidence as to the value of this portion of the property. However, it does form part of the “front” part of the property and is higher than the marsh property and could be utilized with practically little drainage. Due to the scarcity of high land in the vicinity of the defendant’s land and the fact that all of the high land nearby is bordered by low marsh the value of any property which could be used is higher than the same type of property located elsewhere. For this reason we are of the opinion, from evidence in this record, as to sales of high land in the vicinity, that the valuation of $333.33 per acre is not a sufficient compensation to the defendant.
The third section of the right of way is truly “high lands” in the local expression and is very valuable due to its scarcity. The plaintiff-appellee does not deny this tract is worth much more than the other portions. The petition states the defendant was offered $1,000 per acre for this tract and its expert so evaluated this section. The acreage to be taken by this tract amounts to 0.175 of an acre. From sales in the relatively nearby sector we are of the opinion that the valuation awarded by the trial court of $2,000 per acre for the second and third tracts is not manifestly wrong.
There is some evidence that the defendant will receive some benefits from the construction of the work planned in that the remainder of his property will become more valuable as the levee will keep out the salt water and the marsh land behind it will finally become dry. The remainder of the property of the defendant will be within a drainage district and the present swamp and marsh comprising a portion of his tract will not become flooded but eventually can be utilized for residential property or the construction thereon of buildings. These special benefits offset any severance damages claimed by the defendant and for this reason we do not believe he is entitled to any severance damages. See Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654; State Through Dept, of Highways v. Central Realty Investment Co., 238 La. 965, 117 So.2d 261; and authorities therein cited.
The judgment of the District Court is affirmed at the cost of the defendant.