144 So.2d 186 (1962)
GREATER BATON ROUGE CONSOLIDATED SEWER DISTRICT
v.
Strauder G. NELSON et al.
No. 5587.
Court of Appeal of Louisiana, First Circuit.
June 29, 1962.
Rehearing Denied September 25, 1962.
*187 McCollister, Belcher & McCleary, by Rolfe H. McCollister, Baton Rouge, for appellant.
John V. Parker, Asst. Parish Atty., Baton Rouge, for appellee.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
From the judgment of the trial court ordering their land (a tract containing 16.316 acres, situated in the City of Baton Rouge) expropriated and condemning same for use in the construction of a sewerage disposal plant by plaintiff, Greater Baton Rouge Consolidated Sewer District (hereinafter sometimes referred to and designated as "the District"), upon payment by said District of the sum of $8,355.00 per acre or an aggregate of $136,220.00, defendants have taken this devolutive appeal.
The instant appeal presents two issues namely (1) the adequacy of the award made defendant for the property taken and (2) the sufficiency of the fees allotted by the learned trial court to defendants' expert witnesses who testified herein. Plaintiff has answered the appeal praying for a reduction in the award to the unit price of $6,700.00 per acre or an aggregate of $109,000.00.
Defendants' chief complaint is that the learned trial judge erred in arbitrarily fixing the market value of the property in question at the average of the values placed thereon by the four expert witnesses who testified hereintwo on behalf of plaintiff and two on behalf of defendants. In thus fixing the market value of their land, defendants maintain the trial court has completely ignored the jurisprudence established in State, Through the Department of Highways v. Chappell et al., La.App., 137 So.2d 432, which held that market value of property taken in expropriation proceedings may not be fixed by the simple expedient of averaging the appraisals of the expert witnesses who testify in such proceedings.
All of the experts who testified in the initial case used, (inter alia) the comparable sales approach in valuing the property in question. The same comparables were employed by the experts for both plaintiff and defendants. Each of the experts made certain adjustments deemed necessary because there were no sales of comparable *188 property made within a period of three years preceding the taking of defendants' property and also because of certain differences between defendants' property and the transactions chosen as comparables.
More specifically, defendants maintain the testimony of plaintiff's experts should be disregarded entirely for the reason that both said experts, by their own admission, ignored important distinguishing aspects between the comparables chosen and defendants' property and also because one of plaintiff's said experts made an adjustment for normal annual increase in property values in the sum of 3½% per year arbitrarily on the basis that such is the amount yielded by funds on deposit with local building and loan associations. On the other hand, however, plaintiff contends that the appraisals of defendants' experts placed undue stress and consideration upon certain acknowledged differences between defendants' property and the comparables selected. Plaintiff further contends that defendants' experts have inflated their appraisals by using the projected subdivision value of the tract which method of appraisal is conjectural and speculative under the circumstances existing herein and have ignored certain factors which detract from the value of defendants' property. For these reasons it is urged on behalf of appellees that the valuations placed upon the property by defendants' experts be completely rejected and the compensation awarded defendants reduced as hereinabove indicated.
The record reflects that plaintiff's witnesses, Roseman and Perkins, appraised the subject property at unit prices of $6,400.00 and $6,720.00 per acre, respectively, while defendants' experts Brown and Munson estimated its value at $9,800.00 and $10,500.00 per acre, respectively.
In the written reasons for judgment appearing in the record, our learned brother below attempted to give equal weight to the testimony of the various expert witnesses by averaging their valuations. He cited State, through Department of Highways v. Hub Realty Co., 239 La. 154, 118 So.2d 364, and stated:
"The only way the court can arrive at a fair value in these circumstances is to give due weight and consideration to the opinions expressed by appraisers who by experience and study are in position to know what the property is worth.
"* * * In this case now before the court the differences in the appraisals of the present day value of the subject property come about by the honest attempt by each expert to reconcile the prices of other properties sold several years ago, as to location, size, price, use, etc., with the same elements of the subject property, so as to make those other properties comparables today. All of them use the same method and the same comparables. The testimony of each witness is quite lengthy and the explanations are given in much detail. To recite here even a partial analysis of their reasonings would extend these remarks unnecessarily. It is impossible to conclude that any one of these four experts is more reasonable, more honest and more nearly right than the others. I have known all of these witnesses personally and well for many years and I know that each of them has had wide and varied experiences in their field and that each of them is possessed of the highest degree of integrity and intelligence. Their testimony is full proof that each of them has given extensive and thorough study to this property and to all phases connected with it to arrive at a fair conclusion. It was said in the case of State, [through Department of Highways] v. Hub Realty Co., supra, that it is the duty of the court to give effect to each expert if that testimony `appears to be well reasoned and sincere.' In that case the value was arrived at by taking the average of the values given by plaintiff's experts.

*189 Therefore, it should be equally acceptable to take the average of all the experts if their testimony `appears to be well reasoned and sincere.' I dislike fixing a value by taking averages, but in this case it is my opinion that the appraisement of each of these experts is equally honest, sincere and based on reasonable considerations and that it is safe and proper to take the average of the four appraisements."
The parties are in agreement regarding the applicable law and concede that in expropriation proceedings the amount due the owner for private property taken for public purposes is the market value of the property at the time of taking. It is likewise agreed that market value is the fair price as between a willing and informed purchaser and a willing and informed vendor under ordinary and usual circumstances. American Tel. & Tel. Co. v. East End Realty Co., 223 La. 532, 66 So.2d 327; Central Louisiana Electric Co. v. Rice, La.App., 131 So.2d 405; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914.
From the foregoing it will readily appear that the burning issue between the litigants at bar is the weight to be given the testimony of the various experts who testified herein.
As established by the jurisprudence of this state, the general rule regarding the weight to be given the testimony of qualified experts in the determination of market value of expropriated property is that the opinion of each such witness should be given effect if and when it appears well grounded from the standpoint of sincerity and good reasoning. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State of Louisiana Through Dept. of Highways v. Glassell, 226 La. 988, 77 So.2d 881.
Where the expert's opinion is not predicated upon sound reasoning, such as, the consideration of comparables which are not in fact similar or located in the vicinity of the expropriated property, (State Through Department of Highways v. Stoer, 238 La. 718, 116 So.2d 498; State Through Department of Highways v. Barber, 238 La. 587, 115 So.2d 864) or the consideration of a land use speculative and conjectural in nature (Central Louisiana Electric Co. v. Harang, La.App., 131 So. 2d 398), or the failure to take other factors and circumstances into consideration (State Through Department of Highways v. Barber, supra), the general rule hereinabove stated does not apply and effect will be given only to the opinions of those experts whose testimony is grounded on the best reasoning.
In an expropriation suit it is necessary to arrive at a value which is neither inflated to the prejudice of the expropriating authority nor minimized to an extent which would deny the owner fair, reasonable and just compensation. Accordingly, in such cases, all evidence tendered on behalf of the contending parties must be carefully scrutinized, evaluated and weighed. State Through Department of Highways v. Cook, La.App., 124 So.2d 221.
For obvious reasons any tendency to average appraisals solely as a matter of convenience and expediency to the courts must be rejected as utterly unwarranted and unjustified. To permit the averaging of appraisals which are not equally sound and logical will only lead to gross inequities and is, therefore, a method of solution to be discouraged and condemned at every opportunity. Adoption of such a procedure, as time saving as it may be to the courts, is no substitute for the obligation of the courts to dispense justice for justice's sake. Such a practice could only lead to the absurd result wherein ridiculous extremes would be resorted to by the contending parties to insure themselves of such protection as would thus be available under such a system.
*190 We wish to make it clear, however, that we impute no improper motive to our most respected brother below for the quoted portions of his reasons for judgment clearly indicate that he considered the testimony of the appraisers in the instant case to be entitled to equal weight. His reasons for so concluding, however, appear subjective and we believe that therein only does the error herein lie. Our careful analysis of the reasons given by the various experts in support of their respective appraisals indicates, as hereinafter shown, that the testimony of each is not entitled to equal weight.
The evidence shows subject property to be situated in South Baton Rouge in the general area bounded North by South Boulevard, East by Nicholson Drive which is one of the primary traffic arteries in the City, West by River Road which is one of the lesser principal traffic routes and South by Louisiana State University. It is also situated within a short distance south of and will have direct access (via the River Road which runs along the entire western boundary of the tract) to the Bridge which is to be constructed across the Mississippi River and will have its eastern terminus on South Boulevard, Baton Rouge. Direct access to Nicholson Drive is had via McKinley Street which bounds a portion of the property on the south. The property in question consists of 16.316 acres of unimproved land bounded West by the River Road (a hardsurfaced thoroughfare), North by Coolidge Street which dead ends at the Main line of the Illinois Central Railroad (which said railroad forms a portion of the eastern boundary of defendants' property), on the East by property of a concern known as Southeast Fabricators and the hereinbefore mentioned railroad, and on the South by West McKinley Street and property of Southeast Fabricators.
The hereinabove referred to property of Southeast Fabricators is in reality a 4.434 acre tract taken out of the southeast corner of defendants' property and is situated at the junction of the herein previously mentioned railroad and McKinley Street. A lot measuring 210 feet along the west side of the railroad and 120 feet along the North side of McKinley Street (in turn located in the Southeast corner of the property of Southeast Fabricators and forming the northwest corner of the railroad and McKinley Street) is owned by and referred to by all experts as the Atlas Transfer property.
It is conceded by all of the expert witnesses that defendants' property is extremely valuable industrial property. Although the land is zoned M-3 which permits of unlimited industrial use, the witnesses are in agreement that its best and highest use is light industrial in that it is situated in an area presently devoted to and best used for such purposes as warehousing, distribution, processing plants, small manufacturing and other similar and related purposes.
One of the comparables considered by all of the appraisers was a sale dated October 27, 1955, in which Southern Technical Service, Inc. (hereinafter sometimes referred to simply as "Southern Technical"), acquired a 5.776 acre tract of land situated approximately four blocks south of subject property for the price of $32,500.00 or $5,626.00 per acre. The property purchased by Southern Technical fronts 340 feet on the west side of the Illinois Central Railroad. It is bounded North by West Roosevelt Street (the third street south of West McKinley Street), and West by Indiana Street (a four block long street which runs south from West McKinley Street and dead ends at the Southwest corner of the property of Southern Technical). The Southern boundary of the property of Southern Technical has no street frontage. Access from the Southern Technical property to the River Road (which is one rather long block distant) is by way of West Roosevelt Street or by Daniel Webster Street (a short street running westerly from Indiana Street to the River Road). Both Indiana Street and Daniel Webster Street were gravel streets at the time of *191 the aforesaid purchase by Southern Technical.
The second comparable considered by the experts was the purchase on February 13, 1957, by Southeast Fabricators, Inc. of the herein previously mentioned 4.434 acres comprising the southeast corner of defendants' property, for the recited consideration of $50,000.00. This latter comparable presented certain difficulties in view of the presence thereon of substantial improvements at the time of the sale so that the experts found it necessary to determine what portion of the purchase price was attributable and allocable to the land alone.
Plaintiff's experts made their own estimation of the value of the improvements on the Southeast Fabricators property while defendants' witnesses relied primarily on estimates made by Charles E. Beadles, C. E., President of a construction firm known as C. B. Construction Co., who fixed the value of certain buildings situated on the property. With regard to a cyclone fence surrounding the property, defendants' experts relied upon valuations thereof made by James A. Coley, a salesman for the Hagan Storm Fence Company who was called as a witness in defendants' behalf. From the testimony of Mr. Coley it appears that the cost of a new fence similar to that situated on the property of Southeast Fabricators is less than the value placed on the existing fence by plaintiff's appraisers.
Plaintiff's witness, Lowell M. Roseman, valued the improvements on the property of Southeast Fabricators at $22,900.00 and the land at $6,110.00 per acre while plaintiff's remaining expert, Verdi Reece Perkins, appraised the improvements at $26,000.00 and the land at $5,420.00 per acre. Defendants' witness, L. Heidel Brown, valued the improvements at $15,000.00 and the land at $35,000.00 or between $7,900.00 and $8,000.00 per acre while defendants' other witness, Munson, estimated the improvements to have a worth of $15,785.00.
The difficulty of accurately allocating in 1960 the portion of a 1957 sale attributable to land alone when the transaction involved improved realty, no doubt accounts, at least in part, for the difference in valuations placed on the improvements by the appraisers representing the parties to this litigation. The net result is that while consideration of such a comparable does shed some light on the market value of unimproved property situated in the locality, it does not by any means establish the market value of unimproved similar property with any great degree of certainty or accuracy.
In adjusting the value of the Southern Technical property (an unimproved site purchased in 1955), all of the experts agreed that there has been a steady annual increase in property values in the vicinity. Each of the experts utilized different percentages which they contend represents an annual general enhancement in value.
Plaintiff's witness, Roseman, adjusted the value of the Southern Technical property at the rate of 3½% per year solely on the basis that money deposited in local building and loan associations would earn that amount at simple interest. Mr. Perkins, Mr. Brown and Mr. Munson, allowed 7, 10 and 15%, respectively, basing their percentage increases on their knowledge of the market, demand and availability as well as other factors which, in their opinions, affect the value of light industrial property in the community.
Mr. Roseman's employment of an annual increment figure of 3½% solely on the arbitrary basis that money deposited in local financial institutions would return simple interest in that amount appears to be totally unrelated to the market value of real property and such testimony can obviously be of little value to a court of law in fixing the worth of property expropriated for public purposes. While we concede that prior sales of similar property must be adjusted to take into consideration circumstances *192 and market trends intervening between the sale of the comparable and the date of expropriation, it would appear obvious that such adjustments to be of any value to the courts, must be predicated upon a study of the real estate market itself rather than upon the earning power of the dollar invested in financial institutions. While the earning power of the dollar otherwise invested is acknowledged to be a segment of the real estate market and should be considered along with all other basic elements thereof such as, but not limited to, supply and demand, it (earning power) alone may not properly serve as the basis for determining the enhanced value of real property. We believe it common knowledge that the increase or decrease in property values is neither controlled, governed by nor directly related to the earning power of the dollar. In this regard we consider the reasoning of Mr. Roseman unsound.
Mr. Perkins, Mr. Brown and Mr. Munson, on the other hand, supported their conclusions regarding increased valuation with a thorough analysis of the recent real estate market. Although Mr. Roseman viewed the general market with considerable pessimism, Mr. Brown and Mr. Munson stated that even in the face of a declining demand the price of light industrial property continued to rise because of the scarcity of such property within the city. Mr. Perkins declined to label the present market as a "depression type market" and chose instead to refer to it as a "peculiar market". According to Mr. Perkins, although sales volume was down, demand was still present.
Defendants insist that the valuation of plaintiff's experts should be disregarded because, by their own admission, they attributed no difference in value to defendants' property because of certain basic differences between the Southern Technical tract and the subject property. The differences to which defendants refer are alleged greater accessibility, more favorable zoning classification and the fact that defendants' property fronts on streets which are wider and better improved than the streets bounding the Southern Technical property.
In this regard it appears that the Nelson property is situated at the corner of two important paved streets, namely, River Road and McKinley Street, whereas the comparable mentioned is accessible to River Road only through narrow crowded gravel streets which would render large truck and equipment traffic thereon undesirable, hazardous and inconvenient. In view of the admitted classification of the property as light industrial and its being peculiarly suited for use by warehousemen, distributors, small manufacturers and other related enterprises, defendants' experts considered that the fact that the property of defendants has approximately 1300 feet of frontage on the blacktopped River Road and approximately 500 feet frontage on blacktopped West McKinley Street (which latter street is 60 feet in width) while the Southern Technical property fronted on 40 foot wide graveled streets at the time of its sale, added considerable value to subject property as an industrial site. They pointed out that accessibility is important and because of this advantage they believed subject property to be worth considerably more than the comparable Southern Technical tract.
Mr. Perkins' testimony reveals that he considered these advantages but believed them insignificant. He further believed that any difference due to accessibility was offset by the presence of a municipal garbage dump located on the batture of the river within a very short distance of defendants' property.
Messrs. Brown and Munson made additional adjustment for differences in zoning restrictions governing the Nelson tract, zoned M-3, and Southern Technical tract, zoned M-1. It appears that M-3 classification is General Industrial, permitting any use excepting residential whereas M-1 classification is shown to embrace Light Industrial which has certain industrial limitations chiefly among which is the prohibition against industries which are the source of *193 smoke or noise which escape the premises. Defendants maintain that since the property is admittedly industrial the fact that it has fewer restrictions than the comparable mentioned, renders their property more valuable. On the other hand, plaintiff avers that since M-1 classification permits use for light industrial purposes (admittedly the best and highest use of subject property) the M-3 classification adds no value thereto. We believe it cannot be seriously argued that as between two properties whose best and highest use is admittedly industrial, the tract with fewer restrictions regarding its utilization does not have greater value. There appears to be no question but that as between such properties the tract with fewer limitations upon its use will find a more ready market except perhaps in unusual situations wherein property in a more restricted zone may be rendered of greater value by virtue of purely personal motivations such as prestige or consideration of esthetic values.
Defendants' appraisers made additional adjustments predicated upon general improvement of traffic arteries from the River Road to North Baton Rouge, the accessibility of subject property to Nicholson Drive (another main traffic route in the city) and the proximity of defendants' tract to the proposed Mississippi River Bridge previously mentioned in this opinion. In addition they considered subject property more valuable by virtue of its greater railroad frontage.
Mr. Munson's testimony warrants further examination in view of the fact that in arriving at his valuation he placed considerable reliance upon the retail value of the property if subdivided and sold according to a plan whereby the property would be sold in plots of three to five acres in size after development consisting of proposed street and rail spur improvements. In this regard it is desired to point out that where there is no showing that the landowner contemplated subdividing and developing his property, and where it is not shown that such use could be made of the property within the reasonably near future, a value thusly determined is too speculative and conjectural to serve as the criterion of market value in an expropriation proceeding. Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6; Central Louisiana Electric Co. v. Harang, La.App., 131 So.2d 398. In the instant case although there is some testimony to the effect that the land might be so subdivided and sold, the record as a whole does not establish that asserted fact with reasonable certainty. We note that although Mr. Munson stated that the property, if divided into lots of 3 to 5 acres in size would be worth the sum of $13,500.00, nevertheless his final appraisal of the property was $3,000.00 per acre less or the sum of $10,500.00 per acre. In our view, the reasoning followed by Mr. Munson tends to lessen to a degree the weight to be accorded his testimony. We are quite frank to state that although the record reveals all of the experts to be men of considerable experience and ability in the field of real estate appraisal, in the instant case we are most impressed by the testimony of Mr. Brown. Our reading of the record in the instant case discloses that the premises upon which Mr. Brown based his conclusions appear most sound, reasonable and logical.
We believe the position of counsel for plaintiff may be tersely and accurately stated as being that the Southern Technical property and subject property are so substantially comparable and identical that the sole issue in this case is the question of general increase in property values in the area during the period 1955-1956 to 1960. We believe the adjustment for such general increase in value was most reasonably demonstrated by the testimony of Messrs. Brown, Perkins and Munson. We further believe that the refusal of Mr. Perkins to consider and make allowances for the substantial differences herein shown to exist between defendants' property and that of Southern Technical tends to lessen to a degree the weight to be accorded his testimony. *194 His position in this regard appears to be somewhat arbitrary and unwarranted in that it declines to recognize and consider factors which, in our opinion, render subject property more valuable than the property which was used as its comparable.
In view of the foregoing, we conclude that assessing a unit valuation of $9,200.00 per acre to subject property or a total valuation of $150,107.20 for the whole thereof will accord with the controlling principle that weight and consideration must be given to all expert witnesses whose valuations appear founded upon sound principles, reasoning and judgment.
It is well settled in our jurisprudence that experts who testify in expropriation proceedings are entitled not only to fees for their appearances in court but also an award for time spent in preparation for such appearances, provided, however, such fees must be commensurate with the time and effort expended by the experts in such preparatory work as well as bear some degree of uniformity with awards previously made under similar circumstances. Recreation and Parks Commission v. Perkins, 231 La. 869, 93 So.2d 198. In the Perkins case, supra, the court awarded $50.00 per day for attendance in court and $150.00 for preparatory work in the absence of a showing as to how much time was spent by the experts in preparing for trial. In that case the court very reasonably and properly concluded that in fixing such fees no hard and fast rule can be adopted but that each individual instance must be considered in the light of its own peculiar circumstances.
In State v. Grand Consistory, etc., 237 La. 1005, 112 So.2d 692, wherein the property owner was awarded the sum of $323,827.00 in compensation for property taken, expert fees aggregating $1,000.00 were awarded without detailed consideration of the time spent in preparation for trial.
More recently, in State through Department of Highways v. Hart, La.App., 137 So. 2d 361, fees in the sum of $400.00 each were allotted experts who testified in a case wherein the value of the property expropriated was adjudicated to be the sum of $12,769.00. In the Hart case, supra, the amount of the fees was not questioned by either plaintiff or defendant, the sole issue being whether said fees should be taxed as costs or awarded as damages.
In the case at bar both of defendants' experts testified that they spent approximately 100 hours in preparatory work. In this regard their testimony is unchallenged by plaintiff. The record tends to corroborate said witnesses' versions of the approximate time spent in assimilating data and compiling information upon which their appraisals were predicated. It appears that both made several trips to view subject property and spent many hours searching the conveyance records for comparable transactions and examining and analyzing sales and deeds which they believed would shed some light upon the market value of the property in question. It must also be borne in mind that in the instant case defendant owners will receive an award of $9,200.00 per acre or total judgment in the sum of $150,107.20 for the property expropriated.
All of the foregoing circumstances considered, we believe that fixing the fees of defendants' appraisers in the sum of $800.00 each will adequately compensate them for their services.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended and revised and judgment rendered herein fixing the market value of defendants' said property at the total sum of One Hundred Fifty Thousand One Hundred Seven and 20/100 ($150,107.20) Dollars.
It is further ordered, adjudged and decreed that plaintiff, Greater Baton Rouge Consolidated Sewer District, be and the same is hereby ordered, directed and commanded *195 to pay defendants herein the difference between said sum of $150,107.20 and the sum of One Hundred Thirty-Six Thousand Three Hundred Twenty and 00/100 ($136,320.00) Dollars, previously deposited in the registry of the trial court.
It is further ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended and revised to increase the fees awarded the expert witnesses, L. Heidel Brown and William Warren Munson, from the sum of $400.00 each to the sum of $800.00 each; said fees as well as all costs of this appeal to be paid by appellee Greater Baton Rouge Consolidated Sewer District.
It is further ordered, adjudged and decreed that except as herein amended the judgment of the trial court is affirmed.
Amended and affirmed.