143 So.2d 270 (1962)
LOUISIANA POWER AND LIGHT COMPANY
v.
Lionel de BOUCHEL et al.
(Consolidated with Nos. 21472-21474, 21476-21479).
No. 21471.
Court of Appeal of Louisiana, Fourth Circuit.
July 2, 1962.
*271 Clarence F. Favret and Ewell C. Potts, Jr., New Orleans, for defendants and appellants.
Monroe & Lemann, Melvin I. Schwartzman, Andrew P. Carter and Eugene G. Taggart, New Orleans, for plaintiff and appellee.
Before McBRIDE, SAMUEL and JOHNSON, JJ.
McBRIDE, Judge.
This appeal was taken by the defendants in one of the eight cases filed against several landowners by Louisiana Power & Light Company, a corporation authorized to do business in Louisiana, engaged in developing, transmitting and selling electricity for power, lighting, heating and other uses, said suits being authorized under LSA-R.S. 19:2(9). The corporation by said suits is seeking to expropriate a strip of ground across the lands of defendants therein for the purposes of a right of way. The suits were consolidated for trial in the lower court and a separate judgment was rendered in each. An appeal was taken on behalf of the defendant or defendants in each suit, and all appeals were consolidated before us for argument.
This matter was considered by us on a motion to dismiss the appeal. See La.App., 117 So.2d 94.
The lands of Lionel de Bouchel, et al., are located on the left descending bank of the Mississippi River in the Parish of St. Bernard about seven miles below Canal Street in the City of New Orleans, and the plaintiff herein seeks to have the right of way above-mentioned run for a distance of 2,048 feet across said defendants' land, said strip embracing 4.69 acres. Plaintiff tendered to defendants $155.45 for said right of way which defendants refused and this suit ensued. After the trial, judgment was rendered granting plaintiff a servitude and right of way 100 feet in width for the abovementioned distance for the erection and maintenance of an electric transmission line over and across the tract of land of defendants with the right of ingress and egress upon the said right of way upon the payment to defendants of the sum of $469. Defendants have appealed from the judgment and are now contending that the value of the right of way as fixed by the trial judge is inadequate and that the amount awarded should be increased. The trial judge concluded that the land was worth $200 per acre and that one-half of that sum should be allowed per acre for the land embraced in the right of way. Defendants are contending that the land is worth $500 per acre and that the judgment should be increased accordingly. The trial judge rendered comprehensive and well-considered *272 reasons for judgment, and the following portion of said reasons is now adopted by us as part of our opinion herein:
"* * * As stated above, all the lands admittedly are either swampland or marshland, subject to tidal overflow and rainfall inundation. Swampland will bear trees. Marshland will not. There is no development of any kind in the general area, neither residential, commercial, nor industrial. There are plans afoot to construct a channel from the Gulf of Mexico to the Industrial Canal which, when completed, will provide a short cut for heavy shipping into New Orleans. The route of this canal will pass through the area between the 40-arpent canal and Lake Borgne, very near the Lake Borgne side of the general area, and will be at a distance of some three miles from the proposed location of plaintiff's line. While reasonably certain of completion, this `seaway' depends entirely upon continuing federal subsidy.
"The line will be a two-pole, H-frame type, with three conductors suspended from the crossarms. These conductors will, at their lowest point of sage, be approximately 25 feet above the ground level. The strip expropriated will be usable by defendants, or their assignees, for all purposes, except the construction of buildings thereon, such as, cattle grazing, trapping, hunting, fishing; the right to build roads and fences; and all mineral rights.
"Mr. Max J. Derbes, Sr. appeared as expert for plaintiff, Mr. Derbes approached the property on foot as close as the levee would permit but, because of the swamp conditions, could not walk the proposed line. As a substitute, he flew over the line in a helicopter, making four trips, two each way. As comparable sales he cited:
"(a) Acquisitions of 100-foot right-of-way along portions of this same subject line, at a price of $66.15 per acre among which was one acquisition from Williams, Inc., owners of vast acreage in St. Bernard and elsewhere in Louisiana;
"(b) A sale of high land about one mile East of the subject property on a basis of $330.72 per acre;
"(c) Rights-of-way on the Eastern boundary of the subject property for $26.43 and $29.41 per acre;
"(d) A sale of high land in September 1957, accessible to two concrete streets at $484.02 per acre;
"(e) A sale of high land in April 1957, at $350.71 per acre;
"(f) A sale of high land in April 1958, at $49.09 per acre, 8 miles Northeast of the subject property;
"(g) A sale in April 1958 of 700 feet back from a highway in the general area at $26.89 per acre.
"Two `rules of thumb' used by Derbes and experts generally, in analyzing comparable sales, are: (a) the valuation of a servitude should be approximately 50% of the fee value in those instances where the owner will retain all uses of the property except for the construction of buildings and, (b) marsh and swampland is generally worth a maximum of one-fourth the value of high land. Upon an analysis of all the comparables available to him, Derbes concluded that the subject property was worth $132.30 per acre in fee, or $66.15 per acre for a servitude.
"Messrs. Angus Eason and Cliff Probst testified as experts for the defendants, and fixed the value at $650.00 per acre, plus, for the right-of-way alone. They based their conclusions on: (a) `Comparables' and (b) The `Seaway' enhancement. Their `comparables' were:
"(1) A right-of-way agreement between Realty Holding Company and *273 New Orleans Public Service, Inc. in April of 1943. This transaction was during war-time and is a number of miles distant from the subject property, and actually within the area of the City of New Orleans; and, the right-of-way contained a clause by which the grantors surrendered and waived all claims for damages. Here, defendants, have reserved all rights to any damages suffered, or may be suffered.
"(2) A right-of-way obtained by Tennessee Gas Transmission Company in the area of Delacroix, some 10 miles distant from the subject property. This, like the right-of-way above, is not an appropriate `comparable'.
"(3) A right-of-way acquired by American Telephone and Telegraph Company against the East End Realty Company, Inc. That was for the laying of a sub-surface coaxial cable abutting a public highway, the main artery into New Orleans from the Eastern United States, which our Supreme Court found to be available for commercial development ([American Tel. & Tel. Co. v. East End Realty Co.] 223 La. 532, 66 So. (2d) 327) and allowed 2 cents per square foot. This is not comparable to swampland on the Northeast side of the 40-arpent canal in St. Bernard Parish, subject to tidal overflow, with no accessibility of roads or other avenues of communication of any nature whatsoever.
"(4) A right-of-way acquired by Louisiana Southern Railroad recently on the basis of $1,000 per acre. Both experts and another witness, a local resident, asserted that this right-of-way is through swampland similar to the subject properties. None of the witnesses were able to explain, however, why the Railroad's own plat of this right-of-way, when compared with the United States Department of the Interior Quadrangle, shows that the right-of-way is on dry and drained ground, at the edge of the cultivable area, South of Louisiana Highway 32. On cross-examination, the local witness did admit that only the middle portion of the right-of-way was through swampland and that the end near Chalmette, and the end near Southern Natural Gas Property ran through dry, drained land. In rebuttal, Mr. Derbes showed sales that would be comparables if the Louisiana Southern right-of-way were comparable here. These comparables are located on Department of Interior Map known as `Delacroix Quadrangle' (Plaintiff Exhibit `5', numbered 11, 12, 18 and 20, on the above said Map.) The Map shows that each of these `comparable' properties has a frontage on Highway 32, and runs South to the 40-arpent line. In each instance, the properties are made up of some 33% to 50% High land, and the remainder in swamp and marshland. Each of the properties cross the Louisiana Southern right-of-way. These properties were sold, all within the past several months, for prices ranging from $301.28 to $418.40 per acre, an average of about one-third of the price that defendants assert were paid for the Louisiana Southern right-of-way. None of these sales are comparable to the swampland here. Not one of these `comparables' is closer than 5 or 6 miles to the subject property; some as far away as 10 or 12 miles; in a different Parish, and on main highway arteries, subject to commercial development.
"(b) The second basis for a value by defendants' experts was the enhancement to result from construction of the Mississippi River-Gulf Outlet, sometimes known as the `seaway' or `ship channel.' Their theory is that, when the seaway is completed, the land between the seaway and the 40-arpent canal, on the left descending Bank of the Mississippi River, will become industrial property. An examination of the maps shows that the subject property *274 is some three miles from the proposed channel. By comparing the industrial development along the Mississippi River with what might happen along the `seaway' it becomes plain, even from the most optimistic viewpoint, that it will be some years before any benefits accrue to the owners immediately adjacent to the seaway, much less owners of swampland some three miles distant.
"Along both banks of the Mississippi River, at its most highly developed points in the swamplands around New Orleans, there is no industrial development connected with the River as far away as three miles from its banks. Industries might locate along that part of the seaway, near the Industrial Canal, where ingress and egress, and transportation facilities, are available, and not be too distant from distributing points; but hardly from a seaway in a swamp area. The theory of the `seaway' enhancing defendants' lands is too speculative and remote to be considered a factor here. City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675; [Louisiana Ry. & Nav. Co. v. Baton Rouge Brickyard, 136 La. 833] 67 So. 922 [L.R.A.1917A, 402]; Louisiana Railway and Navigation Co. v. Sarpy, 125 La. 388, 51 So. 433.
"It is well settled in Louisiana that property under expropriation must be valued on the basis of its highest present-day, or foreseeable future use, and the price satisfactory to a willing seller and a willing purchaser. Important in determining market value are comparable sales in the vicinity. Department of Highways v. Hebert, 227 La. 111, 78 So. (2d) 528; Housing Authority v. Boudwine, 224 La. 988, 71 So. (2d) 541; LSA-R.S. 19:9.
"The `comparables' presented by defendants' experts are too remote in location, in some instances in time; and in most instances deal with entirely different property in parishes which are `built up' and have commercial value. See Gulf States Utilities, Inc. v. Domingue, [La.App.] 72 So.(2d) 623; State v. Dowling, 205 La. 1061 at p. 1068, 18 So.(2d) 616.
"Defendants' land is admittedly swampland, subject to tidal overflow, and its most profitable use at this time, and in the foreseeable future, is for hunting and trapping. See Caddo Parish School Board v. Willer, 227 La. 201, 78 So.(2d) 833; City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So. (2d) 445.
"Mr. Derbes cited acquisitions of rights-of-way along this same subject line at values substantially similar to those at which he appraised the subject line. See Louisiana Power & Light Company v. Sanders, [La.App.] 110 So. (2d) 154, in which the Court took into account, in valuing property being expropriated, the price paid by the Company to other land owners involved in the expropriation.
"Where the land owner will continue to have full use of the property except for construction of buildings under the lines, the right-of-way should be valued at one-half of the fee value and not, as defendant experts contend, at the full fee value. Gulf States Utilities Company v. Domingue, [La.App.] 72 So.2d 623; Texas Pipeline Company v. Johnson, 223 La. 380, 65 So. (2d) 884; Louisiana Power & Light Company v. Simmons [229 La. 165], 85 So.(2d) 251 (footnote 3), 38 A.L.R. (2d) 785, particularly the note at p. 792.
"Defendants argue that the overhead wires of plaintiff will be dangerous and thereby depreciate the value of adjoining land, and are unsightly. As the lands are swamplands at present, and as defendants argue strenuously that they may, sometime in the future, *275 become industrial, overhead wires will be no more dangerous in such case than they are in populous cities; certainly not objectionable from an esthetic point-of-view in an industrial area, where power lines are a life or death economic necessity.
"Significant in evidence of a fair market value here, are two sales:
"(1) One by William, Inc., owners of vast marshland acreage in the area involved and elsewhere, which accepted the price tendered by plaintiff without question;
"(2) A sale in April 1958, by the Succession of Robinson to Meraux, one of the defendants here, for a price of about $60.00 per acre. Defendants contend this sale should be ignored since it was made at public auction, hence the vendor was an `unwilling seller'. The unwillingness of the seller is completely offset by the fact the sale was made to the highest bidder in open competition with the world, after due advertisement and necessarily at arm's length.
"Considering all factors and comparable sales, and the retention by defendants of all attributes of a fee owner, except the right to erect structures on the right-of-way, a value of $200.00 per acre seems fair * * *."
We think the trial judge was correct in his conclusions as to the value of the strip expropriated.
In support of the argument by appellants that the overhead wires of plaintiff will be dangerous and that said fact should be taken into consideration by the court in fixing the value of the land they cite Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636. We do not think said case has application here for the reason that the court was there dealing with a gasoline pipe line running through defendant's land which had been bought for the purpose of making a residence subdivision. The Court in fixing value took into consideration the evidence showing the difficulty in persuading people to buy lots adjoining or in close proximity to pipe lines because of the fear of danger. Of course the land we are dealing with in the instant case is not improved and there is no proof showing that land of such type will be improved for building purposes even in the remote future.
For the reasons assigned, the judgment, appealed from is affirmed.
Affirmed.